UNITED STATES DISTRICT COURT          <u>FOR ONLINE PUBLICATION ONLY</u>
EASTERN DISTRICT OF NEW YORK

STEVEN DOLLAR

                              Plaintiff,          MEMORANDUM
                                                  <u>AND ORDER</u>
            - versus -                            10-CV-4807

THE BROOKLYN HOSPITAL CENTER

                              Defendant.

A P P E A R A N C E S

          STEVEN DOLLAR
                300 Dumont Avenue
                Brooklyn, New York 11212
                *Pro Se Plaintiff*

          LITTLER MENDELSON, PC
                900 Third Avenue
                New York, NY 10022
          By:   Barbara E. Hoey
                Amy Suzanne Donovan
                Michael P. Pappas
                *Attorneys for Defendant*

JOHN GLEESON, United States District Judge:

          Steven Dollar brings this *pro se* action against his former employer, the Brooklyn

Hospital Center ("BHC"), under the Americans with Disabilities Act of 1990, 42 U.S.C. § 12112

*et seq.*, alleging that BHC terminated his employment because of his physical disability.  BHC

moves for summary judgment under Federal Rule of Civil Procedure 56.  For the reasons set

forth below, I grant BHC's motion.

                              BACKGROUND

          The facts as to which there is no genuine dispute are as follows:  Dollar began

working for BHC in January of 2002.  (Def.'s 56.1 ¶ 1; Pl. Dep. at 45-46.)  After being laid off

with several of his colleagues for "cost savings" reasons about a year later, Dollar was rehired by

BHC in February of 2004 to work part-time as a dietary helper in BHC's food and nutrition

department.  (Def 56.1 ¶¶ 3-4; Pl. Dep. at 62-64, 69.)

Prior to beginning work at BHC, Dollar was involved in a car accident that

resulted in serious physical injury, including a herniated disk in his spine.  (Pl. Dep. at 83.)

Dollar's injuries from the accident caused him significant and enduring pain, as a result of which

Dollar took a series of leaves of absence from his employment at BHC.  (*Id.*)

Dollar's first leave of absence began in August 2004 and ended in August 2005.

(Def.'s 56.1 ¶¶ 5, 7; Pl. Dep. at 83, 85.)  At the end of this period of leave, BHC restored Dollar

to the same position he occupied prior to his leave, at the same pay.  (Def.'s 56.1 ¶ 8; Pl. Dep. at

88.)  Dollar began his second leave of absence, which lasted for almost two years, on January 3,

2006.  (Def.'s 56.1 ¶¶ 9, 22; Pl. Dep. at 91, 168.)  Around that time, Dollar submitted to BHC a

copy of his request for disability benefits, which included an affirmation from his treating

physician that he was currently disabled and unable to work but would be able to return to work

in a month.  (Pl. Dep. at 100; Ex. 27.)  On May 2, 2006, July 5, 2006, September 1, 2006, and

October 31, 2006, Dollar requested and was granted extensions of his January 3, 2006 disability

leave.  (Def.'s 56.1 ¶ 10; Exs. 28-34.)  Each of these requests was accompanied by an affirmation

by Dollar's treating physician that Dollar's disability persisted and noted Dollar's next

appointment with his physician, which each time was approximately two months away.  (Exs.

28-34.)  All but the May 2 request specified that Dollar could return to work in four weeks.

(Exs. 30, 32, 34.)

Although Dollar believed his treating physician would send in another request for

extension of his disability leave in or around December 2006, Dollar received notice, dated

February 5, 2007, from BHC that it had not received recent communication from him about extending his leave.  (Pl. Dep. at 128, 148; Ex. 36.)  Therefore, the letter noted, BHC considered Dollar to be on unauthorized leave.  (Ex. 36.)  The letter advised Dollar that "[h]ospital policy require[d him] to maintain updated medical documentation information, including an expected or estimated date that [he would] return to work."[1]  (*Id.*)  The letter further warned that if Dollar did not have his physician provide information about his current medical status, including the date on which he would return to work, by February 15, 2007, he would be terminated.  (*Id.*)  Dollar did not respond, and by letter dated February 16, 2007, BHC informed Dollar that his employment was terminated.  (Ex. 37.)

Upon receiving the February 16 letter, Dollar called BHC and explained that he believed documentation of his continuing disability had been faxed by his physician to the hospital.  (Pl. Dep. at 148.)  BHC thereafter permitted Dollar to submit updated medical information and rescinded his termination. (Def.'s 56.1 ¶¶ 19-20; Pl. Dep. at 151-54.)  BHC, however, warned Dollar that if he failed to update his medical documentation in the future, he would be effectively abandoning his position.  (Pl. Dep. at 153.)  BHC asked him to be more prompt in submitting his documentation and to follow up to make sure that BHC received it.  (Pl. Dep. at 151, 153.)

On February 28, 2007, May 1, 2007, July 3, 2007, September 4, 2007, and November 2, 2007, Dollar requested and was granted extensions of his January 3, 2006 disability leave.  (Def.'s 56.1 ¶¶ 20-21; Exs. 38-47.)  Again, each of these requests (1) included an affirmation by Dollar's treating physician that Dollar's disability was ongoing; (2) reflected that

---

[1]     Written hospital policy requires that an employee taking a leave of absence due to illness must provide "monthly or 'upon request' healthcare provider updates" that "indicate the expected date of return."  (Arthur Decl. Ex. A at 2.)  According to the policy, failure to comport with its directives "may jeopardize [leave of absence] status."  (*Id.*)  Although Dollar disputes that he ever received a copy of this written policy, he does not dispute that it existed or that he was aware of its content.  (Pl.'s 56.1 at 3.)

Dollar had scheduled his next appointment with his physician in approximately two months; and (3) stated that Dollar would be able to return to work in four weeks.  (Exs. 38-47.)  Dollar returned to work in November 2007.  (Def.'s 56.1 ¶ 23; Pl. Dep. at 168.)

Dollar began his third leave of absence in early May 2008, and submitted to BHC medical documentation of the recurrence of his disability soon thereafter.  (Pl. Dep. at 174, 184; Exs. 50, 52.)  He applied for extensions of his leave on June 3, 2008, August 1, 2008, October 1, 2008, December 9, 2008, February 3, 2009, and April 1, 2009. (Exs. 53-54, 56-64.)  As before, his requests provided an affirmation by his treating physician that he remained disabled and all but his last submission reflected that would next see his physician in approximately two months. (*Id.*)  Each submission noted that Dollar could return to work in four weeks, but Dollar's last submission also included the more specific information that Dollar could return to work on May 4, 2009.  (*Id.*)

Dollar did not return to work on May 4, 2009.  (Def.'s 56.1 ¶ 27; Pl. Dep. at 202.) On June 17, 2009, BHC sent Dollar a letter stating that he was on unauthorized leave because he had still not returned to work and had not submitted any medical documentation justifying his continued absence.  (Def.'s 56.1 ¶ 29; Ex. 65.)  The letter warned that if Dollar did not submit updated documentation from his physician by June 26, 2009, BHC would terminate his employment.  (*Id.*)

On June 23, 2009, Dollar submitted medical documentation indicating that he remained disabled but could return to work in four weeks.  (Def.'s 56.1 ¶ 31; Pl. Dep. at 211; Ex. 66.)  Dollar did not return to work or submit additional documentation between June 23, 2009, and October 12, 2009,[2] when BHC sent him a letter terminating his employment for the stated

---

[2]        Dollar states in his Affidavit/Affirmation in Opposition to Defendant's Motion that he "did not fail to submit any documentation supporting [his] medical leave."  Pl. Aff. at 1.  However, this generalized assertion

4

reason that he "failed to submit documentation supporting [his] medical leave of absence." (Def.'s 56.1 ¶¶ 32-34; Pl. Dep. at 215; Ex. 67.)

Dollar filed a charge of disability discrimination with the Equal Employment Opportunity Commission ("EEOC") on June 29, 2010.  (Ex.79.)  A month later, on July 30, 2010, the EEOC advised Dollar that it had determined that the evidence in his case "fail[ed] to indicate that a violation ha[d] occurred" and was dismissing his charge, and it issued Dollar a right-to-sue letter.  (Ex. 81.)  This federal action followed on October 15, 2010.

DISCUSSION

A.    *Summary Judgment Standard*

Summary judgment is required "if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law."  Fed. R. Civ. Proc. 56(a).  In applying this standard, a court "must draw all reasonable inferences in favor of the nonmoving party, and . . . may not make credibility determinations or weigh the evidence."  *Reeves v. Sanderson Plumbing Prods., Inc.*, 530 U.S. 133, 150 (2000).  Thus, after reviewing "the record taken as a whole," *Matsushita Elec. Indus. Co., Ltd. v. Zenith Radio Corp.*, 475 U.S. 574, 587 (1986), I grant summary judgment only if "no rational finder of fact could find in favor of the non-moving party," *Carlton v. Mystic Transp., Inc.*, 202 F.3d 129, 134 (2d Cir. 2000).  Just as at other stages of a case, on a summary judgment motion, courts must give "special latitude" to *pro se* litigants, *Salahuddin v. Coughlin*, 999 F. Supp. 526, 535 (S.D.N.Y. 1988), and read their submissions liberally, *Brownell v. Krom*, 446 F.3d 305, 310 (2d Cir. 2006).

---

does nothing to undermine the unequivocal deposition testimony of Dollar himself that he failed to submit any doctor's notes to BHC between June 23, 2009, and October 12, 2009.  (Pl. Dep. at 215.)

Also, courts must be "particularly cautious about granting summary judgment in a discrimination case when the employer's intent is in question." *Schwapp v. Town of Avon*, 118 F.3d 106, 110 (2d Cir. 1997). In such cases courts should carefully scrutinize the submissions of the parties and deny a motion for summary judgment even when only circumstantial evidence suggests a genuine dispute of material fact. *Id.* However, as in all similarly "fact-intensive context[s]," summary judgment is appropriate in limited circumstances in discrimination cases. *Abdu-Brisson v. Delta Air Lines, Inc.*, 239 F.3d 456, 466 (2d Cir. 2001).

B.     *Analysis*

Under the Americans with Disabilities Act ("ADA"), an employer may not "discriminate against a qualified individual on the basis of disability in regard to . . . [the] discharge of employees." 42 U.S.C. § 12112(a). When deciding a motion for summary judgment dismissing an ADA employment discrimination claim, we employ the burden-shifting analysis set forth by the Supreme Court in *McDonnell Douglas Corp. v. Green*, 411 U.S. 792, 93 (1973). *Sista v. CDC Ixis N. Am., Inc.*, 445 F.3d 161, 169 (2d Cir. 2006). Under this framework, the "plaintiff must establish a prima facie case; the employer must offer through the introduction of admissible evidence a legitimate non-discriminatory reason for the discharge; and the plaintiff must then produce evidence and carry the burden of persuasion that the proffered reason is a pretext" for discrimination. *Id.*

Here, even assuming that Dollar has established a prima facie case -- a question I do not reach -- BHC has proffered a nondiscriminatory reason for his discharge: his failure to either provide to BHC regular updates regarding his ongoing medical need for disability leave or return to work. Thus, Dollar bears the burden to come forward with evidence on which a reasonable jury could conclude that it was discriminatory animus, not the proffered or any other

6

nondiscriminatory reason, that motivated BHC to discharge him.  On the evidence before me, no reasonable jury could reach that conclusion.

No material facts are in genuine dispute.  Between his rehire in February 2004 and his termination in October 2009, BHC permitted Dollar to take almost four years of medical leave.  During this time, BHC maintained a policy, which it communicated to Dollar through letters and in person, that employees on medical leave were required to regularly provide updated documentation of their ongoing need for the leave and expected date of return.  When Dollar complied with this policy, he was granted extensions of his medical leave.  When Dollar failed to comply with this policy, BHC issued written and verbal warnings -- one in the form of a termination that was later rescinded -- that Dollar would face negative consequences if he continued to violate the policy, and it ultimately terminated his employment in October 2009 after almost four months without communication from him.

Dollar points out that BHC did not give him a final warning before it terminated his employment in October 2009 and refused to rescind his termination.   He asks me to infer that, because BHC's strict application of its stated leave policy stands in stark contrast with BHC's more lenient earlier behavior, BHC's decision to terminate him in October 2009 was driven by discriminatory animus.  Even under a liberal construction of Dollar's submissions, this inference lacks sufficient support in the evidence.  BHC was extremely accommodating of Dollar throughout a period of several years.  In 2007, when his failure to follow reasonable rules requiring him to update BHC regarding his medical condition justified his termination, BHC showed compassion and rescinded his termination.  Its refusal to accord Dollar that courtesy a second time in 2009 does not support an inference of unlawful discrimination.  Indeed, to hold otherwise in these circumstances would create a perverse incentive:  If employers know that the

7

refusal to show compassion on a second occasion will constitute evidence of discriminatory intent, they will be disinclined to show it the first time.  Because no reasonable trier of fact would make the inference of discriminatory motive proposed by Dollar, and because Dollar identifies no other evidence is support of a finding that discrimination was at play in his discharge, summary judgment is proper.

CONCLUSION

The motion for summary judgment is granted.

So ordered.

John Gleeson, U.S.D.J.

Dated: October 24, 2011
      Brooklyn, New York